**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
EASTERN DIVISION**

VIRTIS LEE ALFORD                                                                                          PLAINTIFF

v.                                             No. 2: 11CV00042 JLH-BD

MICHAEL J. ASTRUE, Commissioner,
Social Security Administration                                                                      DEFENDANT

**OPINION AND ORDER**

Virtis Lee Alford filed this case to challenge the Social Security Administration's denial of his application for supplemental security income (SSI).  Alford applied for SSI on May 3, 2007, on the basis of disability.  Tr. 16.  Alford was medically approved for SSI on August, 27, 2007, but his application was eventually denied because he did not meet SSI's financial eligibility requirements. Tr. 10, 27, 32.  Alford asked for a hearing before an Administrative Law Judge.  Tr. 31.  On December 4, 2009, after the hearing, the ALJ ruled against Alford, stating that he was ineligible for SSI due to excess unearned income.  Tr. 10-11.

Alford sought review from the Appeals Council, which denied the request.  Tr. 2.  The ALJ's decision thus became the final decision of the SSA Commissioner.  Alford initiated this action and asked for judicial review of the Commissioner's decision.

**Scope of judicial review**.  In reviewing a decision denying an application for disability benefits, the Court must determine whether substantial evidence supports the Commissioner's decision and whether the Commissioner made a legal error.  *See* 42 U.S.C. § 405(g); *Slusser v. Astrue*, 557 F.3d 923, 925 (8th Cir. 2009); *Long v. Chater*, 108 F.3d 185, 187 (8th Cir. 1997). Substantial evidence is more than a mere scintilla of evidence; it means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  *Slusser*, 557 F.3d at 925.  The Court must consider evidence that detracts from the Commissioner's decision as well as evidence that

supports the decision, but the Court may not reverse the Commissioner's decision simply because substantial evidence supports a contrary decision. *See Sultan v. Barnhart*, 368 F.3d 857, 863 (8th Cir. 2004); *Woolf v. Shalala*, 3 F.3d 1210, 1213 (8th Cir. 1993).

**Eligibility for SSI**. The SSI program provides "cash assistance to needy individuals who are aged, blind, or disabled." *Tierney v. Schweiker*, 718 F.2d 449, 451 (D.C. Cir. 1983); *see* 20 C.F.R. § 416.110. To receive benefits under the program, a person must qualify on medical or age grounds, and meet financial eligibility requirements. *Tierney*, 718 F.2d at 451. "Thus, a claimant not engaging in [substantial gainful activity] and otherwise eligible for the SSI program will be denied benefits if he or she has too much income or too many resources." *Dotson v. Shalala*, 1 F.3d 571, 576 n.6 (7th Cir. 1993). The specific financial eligibility requirement at issue here is that a claimant may have no more than $2,000. *See* 20 C.F.R. § 416.1205 (post-Jan. 1, 1989). When Alford applied for SSI, he reported that he had $1,300 in the bank. Tr. 17.

**The Commissioner's decision**. The ALJ found that Alford had more than $16,000 in the bank in May 2007, but withdrew the money just before applying for SSI. The ALJ reasoned that because Alford failed to account for this money, the SSA could not determine whether the money was spent or simply moved to another account. Because of Alford's failure to cooperate in providing this information, the ALJ decided that his unearned income precluded his SSI eligibility and denied his request. Tr. 10-11.

**Alford's allegation of error**. Alford challenges the Commissioner's decision that he was financially ineligible for SSI. Thus, the question before the Court is whether substantial evidence supports the Commissioner's decision that Alford was financially ineligible and whether the Commissioner made a legal error in denying Alford's request for SSI.

**Whether substantial evidence supports the Commissioner's decision**. The record consists mostly of administrative and financial documents. Alford's bank records show that on April 6, 2007—27 days before applying for SSI—Alford had $19,121.08 in the bank, but he had only $1,357.68 in the same account on May 9, 2007. Tr. 170. The bank records show that the difference—$17,763.40—is accounted for by two $100 withdrawals (April 11, 16), four $50 withdrawals (April 25, 27; May 7, 9), and one $16,500 withdrawal (April 23); checks payable to others in the amounts of $600 (April 13) and $187.80 (April 24); a $75 transfer for insurance (April 17); a service charge of $15.00; and interest paid of $4.42. Tr. 170-72. Withdrawing most of the money in the account shortly before applying for SSI suggests that Alford withdrew the money to avoid SSI's financial eligibility requirements.

The record also includes a note from Alford's ex-wife.[1] In the note, the ex-wife stated that Alford remodeled her house trailer and paid for the remodeling. Tr. 57. The note provided little detail. During the hearing, the ALJ advised Alford about the need to show the money was used for remodeling, stating "you're going to have to give me receipts from—written receipts from the contractors that did the work, from the place where you bought the material, the carpet, that sort of thing . . . ." Tr. 210. Alford stated that he did not have receipts for labor because he used day laborers, but he had receipts for the materials. Tr. 211.

The record does not include receipts for materials. However, Alford's bank records include copies of checks made payable to a lumber company in the amounts of $289.10, $26.98, $376.62, and $94.64. Tr. 163, 169. The checks were dated prior to the $16,500 withdrawal. Because lumber

---

[1] Although the note states that Virtis Alford and Virginia Alford live together, Virtis Alford's SSI application indicates that they are divorced and do not present themselves as husband and wife. Tr. 16-17.

3

is usually used in remodeling, some of the withdrawn money could have been used to remodel a house trailer, but the amount of money spent on lumber—$787.34—is woefully short of the total amount withdrawn. The failure to provide documentation and the lack of details in the ex-wife's note suggests that Alford did not spend most of the money on remodeling the house trailer.

As noted above, the bank records include a copy of an April 13 $600 check made payable to Alford's ex-wife and annotated "camper trailer." Tr. 172. Because the check was dated before the withdrawals, $600 may have been spent rather than transferred to another account. Spending $600 for a camper trailer, however, again does not account for most of the money withdrawn from in the account.

The record also includes a report of contact. Tr. 32. The report notes that an SSA representative contacted Alford to try and obtain more documentation. The representative reported that Alford claimed he used the money for medical bills, but when she called and asked for receipts, Alford stated that he did not have receipts. Tr. 41. When the representative offered to help in getting a printout of paid medical bills, Alford became angry, changed his story, and said he did not pay the bills because they were too high. Tr. 41. He stated that the agency had no right to look at his financial records and hung up the phone. Tr. 32, 41.

During the hearing, Alford's attorney likewise suggested the money was spent on medical bills. Tr. 211. The ALJ responded, stating "now those doctor bills will be helpful as well because you've got to account for all the money that was withdrawn and then and only then can you prove that you're under the limit that the law sets for income and resources." Tr. Tr. 211-12. The ALJ left the record open so Alford could submit his documentation, but the record includes no evidence about medical bills. Changing his story about spending the money on medical bills, refusing the offer to help

prove the money was spent on medical bills, and failing to provide such bills all suggest Alford withdrew the money rather than spend it.

The foregoing evidence—the $16,500 and other withdrawals, the failure to provide receipts or other documentation showing that the money was spent, and Alford's reaction when asked to provide documentation—suggests Alford transferred his money to avoid SSI financial eligibility rules. Although the evidence is circumstantial, a reasonable mind would accept the evidence as adequate to support the conclusion that Alford had more than $2,000 when he applied for SSI. Thus, substantial evidence supports the ALJ's determination that Alford had excess unearned income when he applied for SSI.

**Whether the Commissioner made a legal error**. Alford asserts that the ALJ erred by not questioning him in greater detail during the hearing. Alford contends the ALJ failed to adequately develop the record.

The ALJ has a duty to fairly and fully develop the record as to the matters at issue. *Landess v. Weinberger*, 490 F.2d 1187, 1189 (8th Cir. 1973). A clamant who maintains the ALJ failed to adequately develop the record bears a heavy burden; the claimant "must show both a failure to develop necessary evidence and unfairness or prejudice from that failure." *Combs v. Astrue*, No. 06-3474, 2007 WL 2174555, *4 (8th Cir. July 30, 2007). *See Shannon v. Chater*, 54 F.3d 484, 488 (8th Cir. 1995).

In this case, the matter at issue was the disposition of the money in Alford's account before he applied to SSI. Alford cannot meet his burden by simply asserting that the ALJ should have questioned him further. Alford knew what was required before the hearing. An agency representative spoke with Alford about the need to confirm financial eligibility and offered to assist

Alford in substantiating his claim that he spent the money on medical bills. In addition, the agency advised Alford in writing about the need to prove the money was spent down below $2,000. Tr. 27.

The ALJ knew Alford's allegations about spending the money on his ex-wife's house trailer and medical bills. The ALJ explained the need to substantiate those claims and left the record open so Alford could provide documentation. Alford provided his bank records, but nothing that substantiated his claims. Tr. 58. Despite the lack of documentation, the ALJ scoured the bank records for evidence that Alford spent the money as he claimed. No need existed to question Alford further. Alford had the opportunity to prove his case.

Moreover, Alford has not explained what further questioning would have revealed or how more testimony would have been dispositive of his claim. Alford was treated fairly. He failed to show he was prejudiced. *See Shannon*, 54 F.3d at 488 (rejecting argument that ALJ failed to develop record to substantiate claimant's testimony, in part, because claimant did not show why his testimony was dispositive of his claim or show he was prejudiced or treated unfairly). The ALJ did not make a legal error.

**Conclusion**. Having determined substantial evidence supports the Commissioner's decision and the Commissioner made no legal error, the Court DENIES Alford's request for relief and AFFIRMS the Commissioner's decision. Alford's complaint is dismissed with prejudice.

IT IS SO ORDERED this 27th day of June, 2012.

_____
J. LEON HOLMES
UNITED STATES DISTRICT JUDGE